# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

## PACER Cover Sheet
## for Electronically Filed Documents

Any data shown here are current as of  06/10/06   . Any element of information on this form, except the received date, is subject to change as changes may be made to the Court's official docket.

| | |
|---|---|
| Case Title: | New Mexico Golf Academy, LLC |
| Case Number: | 04-15974 |

### Document Information

| | |
|---|---|
| Description: | Memorandum Opinion re: [214-1] Motion To Modify [70-1] Order Granting Adequate Protection, [70-2] Order Authorizing Debtor's Use of Cash Collateral by New Mexico Golf Academy, LLC . |
| Received on: | 2006-03-20 15:07:40.000 |
| Date Filed: | 2006-03-20 00:00:00.000 |
| Date Entered On Docket: | 2006-03-21 00:00:00.000 |

### Filer Information

| | |
|---|---|
| Submitted By: | Patti Hennessy |

**If this form is attached to the document identified above, it serves as an endorsed copy of the document as it existed on the above date. To confirm that nothing has changed since then, review the docket.**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO**

In re:   NEW MEXICO GOLF ACADEMY, LLC,                    No. 11-04-15974 MA

Debtor.

**MEMORANDUM OPINION**

THIS MATTER is before the Court on the Motion to Modify Cash Collateral Order ("Motion") filed by the Debtor, New Mexico Golf Academy, LLC ("NMGA"), by and through its attorneys of record, Law Office of George "Dave" Giddens, P.C. (George "Dave" Giddens). The Motion seeks to allow NMGA to apply certain payments which the City of Albuquerque ("City") has agreed to pay NMGA for its use of NMGA's facility to the outstanding indebtedness due New Mexico Bank and Trust ("Bank") so as to keep the loan current, prevent the accrual of unpaid interest, and reduce the principal amount of the Bank's claim.   The Bank supports the Motion.  AB Construction objected to the Motion, asserting that the Bank does not have a lien on NMGA's interest in the property, that it has not been established that the Bank has a valid mortgage on rents or the payments by the City which are the subject of the Motion, and that while AB Construction does not seek to have cash collateral paid to it so that it is not necessary to prove its lien for purposes of contesting the Motion, AB Construction holds a claim of lien that it asserts may have priority over any lien claimed by the Bank.[1]  *See* Response to Motion to Modify Cash Collateral Order, ¶ 4 (Docket # 220).   At the

---

[1]AB Construction also asserts that because the note underlying the Construction Mortgage has matured, and because any renewal of the note has not been approved by the Court, that the Bank cannot assert its claim against cash collateral.  Because the Bank's security interest is based on language in the Construction Mortgage, which has not been released, whether the underlying note has

1

request of the Court, the Bank, the Debtor, and AB Construction filed briefs in support of their positions with regard to the Motion.[2]

After considering the stipulated exhibits in light of the briefs filed by counsel, and being otherwise sufficiently informed, the Court finds that the payments from the City constitute cash collateral that is subject to the Bank's lien, and that AB Construction's mechanic's lien does not constitute an interest in cash collateral. The Bank does not object to the use of its cash collateral as proposed by the Debtor in the Motion. The Court will, therefore, grant the Motion. The Court enters the following findings of fact in accordance with Rule 7052, Fed.R.Bankr.P:

1. NMGA filed a voluntary petition under Chapter 11 of the Bankruptcy Code on August 16, 2004.

2. Pre-petition NMGA constructed certain buildings on a portion of certain real property NMGA leases from the City for the purpose of operating a golf facility.

3. AB Construction assisted with the construction of the buildings, and filed a Claim of Lien

---

matured or been renewed is not relevant to the determination of the Motion.

[2]At a preliminary hearing on the Motion, the Court directed to submit briefs by January 13, 2006. (*See* Docket # 223). On January 12, 2006, the parties submitted a Stipulated Exhibit List to the Motion to Modify Cash Collateral Order (Docket # 231). On January 12, 2006, NMGA filed its brief in support of the Motion (Docket # 230) and on January 13, 2006, the Bank filed its brief in support of the Motion (Docket # 232). AB Construction filed its brief in opposition to the Motion on January 19, 2006 (Docket # 233). Because AB Construction's brief was not filed by January 13, 2006, NMGA and the Bank filed a joint motion asking the Court not to consider AB Construction's Brief. (*See* Docket # 236). AB Construction filed a response, asserting, among other things, that no prejudice has been suffered, and that the exhibits relevant to the Motion were not stipulated to until just prior to the January 13, 2006 deadline. (*See* Docket # 236). Under the circumstances, where the issues have been raised by the Motion and the response thereto and discussed at the preliminary hearing, and where the exhibits relevant to the Motion were not stipulated to until just prior to the January 13, 2006 date set by the Court, the Court will consider the briefs filed by all parties.

2

against the real property upon which the buildings are located. *See* Stipulated Exhibit 19. The Claim of Lien was recorded in the Office of the County Clerk, Bernalillo County, New Mexico on September 18, 2001.

    4. The Claim of Lien notifies the City and NMGA that AB Construction

> claims a lien in the amount of FIVE HUNDRED SIXTY NINE THOUSAND SIX HUNDRED FIFTEEN DOLLARS ($569,615), plus interest and attorney fees as allowed by law on the following described real property located in Bernalillo County, New Mexico:
>
>     . . . .
>
> together with all improvements thereon, for the construction, labor and materials provided by Claimant [AB Construction] for the New Mexico Golf Academy, LLC golf facility located at the Albuquerque International Balloon Fiesta Park.
>
>     . . . .
>
> Claimant claims a lien upon said property and improvements there on in the amount aforesaid above.

    5. The Bank holds a Construction Mortgage against the real property that NMGA leases from the City. The Construction Mortgage was recorded in the Office of the County Clerk of Bernalillo County, New Mexico on March 30, 2001. *See* Stipulated Exhibit 9.

    6. The Construction Mortgage contains the following provisions:

> Grantor [NMGA] presently assigns to Lender [Bank] all of Grantor's rights, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents
>
> THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE AND IS UPON THE STATUTORY MORTGAGE CONDITION FOR THE BREACH OF WHICH IS

3

SUBJECT TO FORECLOSURE AS PROVIDED BY LAW.

7. The Construction Mortgage defines "Rents" as follows: "The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property."

8. The Construction Mortgage defines "Property" as follows:

The word "property" means collectively the Real Property and the Personal Property. The word "Property" also includes all existing or subsequently erected or affixed buildings, improvements, and fixtures, all appurtenances, all rights relating to the Real Property (Including minerals, oil, gas, water, and the like),and all ditch rights (including stock in utilities with ditch or irrigation rights).

9. On September 30, 2004, an Order Authorizing Debtor's Use of Cash Collateral and Granting Adequate Protection ("Cash Collateral Order") was entered. *See* Docket # 70. The Cash Collateral Order was subsequently extended by a Stipulated Order Extending Cash Collateral Order Entered on September 30, 2004 (Docket # 129) and by a Second Stipulated Order Extending Cash Collateral Order Entered on September 30, 2004 (Docket # 143).

10. The Cash Collateral Order includes the following provision:

> Debtor may make adequate protection payments to Bank in its discretion, however, if such payments are made they shall be deposited into a separate, interest bearing account to be established at the Bank, and Bank shall not apply such payments to its indebtedness without further order of this Court.

Cash Collateral Order, ¶ 4(a)(iv).

11. NMGA and the City reached a settlement whereby the City will take possession of NMGA's facility in exchange for certain payments in an amount equal to the mortgage payments NMGA owes the Bank under the Construction Mortgage. *See* Grant of Right of Possession, and

4

Agreement to Terminate Lease Upon City's Buyout of Lease ("Settlement Agreement"), attached as Exhibit 1 to the Joint Motion by Debtor and City to Approve Settlement Agreement (Docket # 183). The Court approved the Settlement Agreement, reserving the issue of whether the Debtor would be entitled to pay the amounts it receives from the City under the settlement directly to the Bank. *See* Docket # 218.

12. NMGA seeks to modify the Cash Collateral Order to provide that the payments from the City be paid to the Bank to reduce the principal amount of the Bank's claim that is secured by the Construction Mortgage.

## DISCUSSION

The dispute over NMGA's proposed use of the funds the City has agreed to pay under the terms of the Settlement Agreement raises three, interrelated issues: 1) whether the funds constitute cash collateral; 2) whether NMGA has a valid lien against the cash collateral; and 3) whether AB Construction's mechanic's lien encumbers the cash collateral. The Bankruptcy Code defines cash collateral as

> cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

The Settlement Agreement between the City and NMGA and approved by this Court provides that the City will be making payments to NMGA in exchange for its right to possession of the property upon

5

which NMGA operated its golf facility, including the buildings and improvements thereon. *See* Settlement Agreement. These payments constitute property of the bankruptcy estate under 11 U.S.C. § 541(a)(1) and (6). NMGA's interest in the real property upon which its facility is located constituted an "interest[] of the debtor in property as of the commencement of the case", and the payments contemplated by the Settlement Agreement are "proceeds, product, offspring, rents, or profits of or from property of the estate." 11 U.S.C. § 541(a)(1) and (6). Thus, the first consideration for determining whether the funds constitute cash collateral under 11 U.S.C. § 363(a) has been met: the estate has an interest in these payments.

Second, 11 U.S.C. § 363(a) requires that an entity other than the debtor have an interest in the funds at issue. NMGA claims an interest in the funds as "rents", based on an assignment of rents clause contained in the Construction Mortgage. "Rents" is defined in the Construction Mortgage as "all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property." This definition is consistent with the definition of rent contained in Black's Law Dictionary: "Consideration paid, usu. periodically for the use or occupancy of property (esp. real property)." Black's Law Dictionary, p. 1299 (Bryan A. Garner, ed., 7th ed. 1999). The Settlement Agreement provides that the City will pay NMGA for its right of possession of the property. Such payments are due monthly. Based on these definitions, the Court finds that the payments contemplated by the Settlement Agreement constitute "rents" within the meaning of 11 U.S.C. § 363(a).

The Construction Mortgage purports to grant the Bank a security interest in future rents. It provides: "[NMGA] presently assigns to Lender [Bank] all of Grantor's rights, title, and interest in and to all present and future leases of the Property and all Rents from the Property." Thus the language of

6

the assignment is a present grant of a lien on a future interest, granting the Bank an interest in the cash collateral which is the subject of the Motion. New Mexico recognizes that mortgages can include an assignment of rents clause that grants the mortgagee a security interest in rents incident to the mortgaged property. In *Mann v. Whitely,* 36 N.M. 1,4, 6 P.2d 468, 469 (1931), the New Mexico Supreme Court held that a clause contained in a mortgage purporting to cover rents was insufficient grounds to grant a receivership, but acknowledged that such language contained in a mortgage constitutes a pledge of the rents, giving "the mortgagee the right upon default to impound the rentals for the protection of the mortgage debt."

AB Construction contends that the assignment of rents can only be enforced in accordance with 11 U.S.C. § 546, and that until certain actions are taken by the creditor in accordance with state law, the assignment of rents remain *inchoate*, and the rents remain property of the debtor so that the Bank does not have an interest in the funds under 11 U.S.C. § 363(a). NMGA and the Bank counter that 11 U.S.C. § 552(b)(2) obviates the need to perfect an assignment of rents in accordance with state law before asserting an interest in post-petition rents as cash collateral, citing *In re Fairview-Takoma Ltd. Partnership,* 206 B.R. 792 (Bankr.D.Md. 1997) and *In re Wrecclesham Grange, Inc.,* 221 B.R. 978 (Bankr.M.D.Fla. 1997). This Court agrees that in accordance with 11 U.S.C. § 552(b)(2), whether a security interest in rents has been perfected under state law is not necessary to a determination that a creditor holds an interest in rents as cash collateral under 11 U.S.C. § 363(a).

Section 552 governs the post-petition effect of a security interest in the debtor's property. Subsection (b)(2) of 11 U.S.C. § provides, in relevant part:

> Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title,

7

and notwithstanding section 546(b)[3] of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property . . . then such security interest extends to such rents and such fees, charges, accounts or other payments acquired by the estate after the commencement of the case to the extent provided in such security agreement, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b)(2).

As observed by the bankruptcy court in *In re Wrecclesham,* "[t]he legislative history behind section 552(b)(2) indicates that it was intended to obviate the need to comply with any additional requirements imposed by state law." *Wrecclesham,* 221 B.R. at 981 (citing *Lyons v. Federal Savings Bank (In re Lyons),* 193 B.R. 637, 649 (Bankr.D.Mass. 1996). *See also, Fairview-Takoma Ltd. Partnership,* 206 B.R. at 801 ("Section 552(b)(2) thus obviates an analysis of state law for purposes of determining whether [creditor's] interest in the Rents is 'perfected' for purposes of § 363(a) . . ."). "[A]s long as a creditor holds a valid prepetition security agreement which extends to rents, the postpetition rents will be subject to the security agreement and constitute cash collateral regardless of whether all state perfection requirements are met." *Wrecclesham,* 221 B.R. at 981 (citing *In re Barkley 3A Investors, Ltd.,* 175 B.R. 755, 758 (Bankr.D.Kan. 1994)).

---

[3]11 U.S.C. § 546(b) limits the trustee's (or debtor-in-possession's) avoidance powers by making them subject to "any generally applicable law that – (A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or (B) provides for maintenance or continuation of perfection of an interest in property to be effective against an entity hat acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.
11 U.S.C. § 546(b)(1).

The Bank's pre-petition security agreement in rents, represented by the assignment of rents provision contained in the recorded Construction Mortgage, constitutes a valid post-petition security interest in rents. *See* 5 Colliers on Bankruptcy (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. rev. 2005) (Subsection 552(b)(2) "does not refer to applicable nonbankruptcy law and is intended to provide a creditor with a valid postpetition interest in rents notwithstanding the creditor's failure to perfect its security interest in rents under applicable state law, as long as the underlying mortgage is properly recorded and contains an assignment of rents."). *See also, In re Barkley 3A Investors, Ltd.,* 175 B.R. 755, 758, n. 6 (Bankr.D.Kan. 1994) ("Under § 552(b)(2), a creditor holding a security agreement which by its terms extends to pre- and postpetition rents will have a security interest in postpetition rents that are cash collateral. The phrase "applicable nonbankruptcy law" does not appear in the new subsection, as it did in the prior section, so with the addition of § 552(b)(2), courts will not look to state law to decide whether a prepetition security interest extends to postpetition rental income."). Thus, in light of the application of 11 U.S.C. § 552(b)(2), the Bank's security interest in rents constitutes a valid security interest in post-petition rents, and the second requirement under 11 U.S.C. §363(a) has, therefore, been established: the Bank also has an interest in the payments provided for in the Settlement Agreement.

AB Construction next asserts that its Claim of Lien also extends to the cash collateral. AB Construction argues that because its Claim of Lien extends to NMGA's leasehold interest in the property, it necessarily extends to proceeds and/or rents of the leasehold interest, including the payments contemplated by the Settlement Agreement, citing *Furr's Supermarkets, Inc. v. Richardson & Richardson, Inc.,* 315 B.R. 776 (D.N.M. 2004). This reasoning is flawed.

9

In *Furr's*, the United States District Court considered the nature of leasehold interests under New Mexico law, and determined that leasehold interests should be viewed as in the nature of real property for purposes of the mechanics' and materialmens' lien statute, such that mechanic's and materialmen's liens can attach to leasehold interests. *Furr's,* 315 B.R. at 785. In considering whether a mechanic's and materialmen's lien can attach to a leasehold interest, the District Court noted that some state statutes expressly provide for attachment to leasehold interests, and that "[w]hile the lien on the leasehold attaches only to the leasehold interest and not to the fee, the mechanic's lien attaches not merely to the improvement placed on the premises, but to the entire interest of the lessee in the leasehold and all the leased premises." *Id.* at 783 (citation omitted). AB Construction seems to suggest that this comment in *Furr's* necessarily means that if AB Construction's Claim of Lien constitutes a valid mechanic's and materialmen's lien against the leasehold interest (and, AB Construction urges, it does), such lien extends to all proceeds of the leased premises, including the payments by the City at issue in the Motion. The statement in *Furr's* does not expressly state that a mechanic's and materialmen's lien on a leasehold interest extends to proceeds or rents of the leasehold interest, and the Court declines to extend *Furr's* beyond the issue presented in that case. Moreover, the application of 11 U.S.C. § 552(b)(2) requires that the extent of a creditor's security interest in post-petition rents necessarily is determined by the security agreement itself. 5 *Collier on Bankruptcy* ¶ 552.03[1] (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. rev. 2005) (Noting that because § 552(b)(2) contains no reference to "applicable nonbankruptcy law" (unlike § 552(b)(1)), "[t]he extent of the security interest [in after-acquired rents], therefore, is determined solely by the security agreement.").

10

AB Construction's Claim of Lien may or may not constitute a valid lien against NMGA's leasehold interest, but the Court need not determine that issue for purposes of resolving the Motion. The only issue with respect AB Construction's Claim of Lien that affects NMGA's request to use cash collateral is the very narrow consideration of whether the Claim of Lien grants AB Construction an interest in the cash collateral. To resolve this issue, the Court need only look to the terms of the Claim of Lien. The Claim of Lien contains no language purporting to give AB Construction a security interest in rents. The grounds recited in the Claim of Lien for asserting AB Construction's lien is the failure by NMGA to pay AB Construction for its material, and labor costs incurred in connection with the construction of the buildings.

In addition, the Claim of Lien is a mechanics' and materialmen's lien. Nothing in the New Mexico Mechanics' and Materialmen's Lien statute, N.M.S.A. 1978 § 48-2-1, et seq., provides that the recording of a mechanics' and materialmen's lien in the real property records where the property upon which labor and materials were provided creates a security interest in the rents or proceeds arising from that property. To the contrary, the New Mexico statutes governing mechanics' and materialmen's liens provide that a person who provides labor or materials to be used in construction has a lien upon real property, N.M.S.A. 1978 § 48-2-2 (Repl. Pamp. 1995), and that "[t]he land upon which any building, improvement or structure is constructed, together with a convenient space about the same . . . is also subject to the lien . . . but if such person owned less than a fee simple estate in such land, then only his interest therein is subject to such lien." N.M.S.A. 1978 § 48-2-4 (Repl. Pamp. 1995). Because neither the language contained in the Claim of Lien nor the New Mexico Mechanics' and Materialmen's Lien statute specifically grant the holder of a mechanics' and materialmen's lien a

11

security interest in rents incident to the property against which the lien is recorded, the Court holds as a matter of law, that AB Construction's Claim of Lien does not constitute a security interest in the cash collateral.

Just as it is not necessary for purposes of resolving this Motion to determine whether AB Construction's Claim of Lien constitutes a valid lien on NMGA's leasehold interest (as opposed to the cash collateral), it is not necessary to determine whether the Bank's Construction Mortgage constitutes a valid lien against NMGA's leasehold interest. It is sufficient to determine that the pre-petition, recorded, Construction Mortgage contains an assignment of rents clause that grants the Bank an interest in the cash collateral consisting of the payments by the City to NMGA for the occupancy of the property, while AB Construction's Claim of Lien does not.

Because the Court finds that AB Construction does not have an interest in the cash collateral at issue, and because the Bank is the only creditor that has an interest in the cash collateral and consents to the proposed use by NMGA of its cash collateral, the Court concludes that it is appropriate to grant the Motion. AB Construction's general objections to the use of the cash collateral to pay NMGA's obligation to the Bank are insufficient to deny the Motion. The fact that the principals of NMGA who have guaranteed the debt to the Bank and have been making the payments to the Bank will benefit from the payment proposed in the Motion is insufficient grounds for denial of the Motion. The City's payments to NMGA for occupancy of the facility constitute the Bank's cash collateral, which can be used to reduce NMGA's indebtedness to the Bank.

12

This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law entered in accordance with Rule 7052, Fed.R.Bankr.P. An order will be entered accordingly.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

I certify that on the date shown on the attached document verification, a true and correct copy of the foregoing was either electronically transmitted, faxed, delivered or mailed to the listed counsel and/or parties.

George Dave Giddens
Attorney for Debtor
10400 Academy NE, Suite 350
Albuquerque, NM 87102

Robert H. Jacobvitz
Attorney for New Mexico Bank and Trust
500 Marquette NW, Suite 650
Albuquerque, NM 87102

Jennie Deden Behles
Attorney for Armstrong/AB Construction
PO Box 7070
Albuquerque, NM 87194

Thomas Grisham
Attorney for AB Construction
600 Central SW, #100
Albuquerque, NM 87102

Rebecca Wardlaw
Attorney for City of Albuquerque
PO Box 2248
Albuquerque, NM 87102

Office of the United States Trustee
PO Box 608
Albuquerque, NM 87103

_____
Patti G. Hennessy
Law Clerk
(505) 348-2545

13